## COMMONWEALTH *vs.* JOSEPH WAKELIN.

Middlesex.     May 20, 1918. — June 25, 1918.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Practice, Criminal,* Plea, Indictment, *Nolle prosequi,* Challenge of jurors.  *Homicide.   Jury and Jurors.   Evidence,* Relevancy and materiality, Competency, Conversation heard by dictograph, Declaration of deceased person, To rebut incompetent but material evidence admitted without objection.  *Dictograph. Husband and Wife.   Words,* " Kill," " Murder."

A defendant in an indictment for murder may not plead "Not guilty" and at the same time as a matter of right reserve the privilege of filing thereafter, either by way of substitution or otherwise, motions, pleas or other matters in their nature preliminary.

The determination of the question, whether after pleading "Not guilty" to an indictment for murder, either in the absence of or by advice of counsel, the defendant shall be permitted to retract such plea and file others, is wholly within the discretion of the court.

An indictment alleging that the defendant on a certain day "at Melrose in the County of Middlesex aforesaid, did assault and beat W with intent to murder her, and by such assault and beating did murder W. Against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided," is sufficient as an indictment for murder.

It is not improper for a judge presiding at the trial of an indictment for murder, to which the defendant has pleaded "Not guilty," to hear, after the jury has been impanelled and in their absence, motions by the defendant for leave to file motions to dismiss and to quash the indictment.

It is not an improper exercise of discretion for the presiding judge to refuse to grant a motion for particulars as to the indictment above described, asking "in what manner and by what means" the defendant assaulted the deceased, "what was the cause of" her death, and "how and in what manner did the alleged assault and beating . . . cause" her death.

There is no such pleading as a disclaimer known to our system of criminal pleading and practice.

The character of a pleading is to be determined by the nature of its averments and not by the name attached to it.

The district attorney, before the impanelling of the jury for the trial of the indictment above described, filed a paper entitled a "disclaimer," in which he in substance said "that the above mentioned indictment sets forth and charges the commission of a crime greater than that which the Commonwealth expects to be able to prove, that is to say, the crime of murder; that the Commonwealth, therefore, disclaims and does not and will not ask or contend for a conviction of the defendant for the crime of murder in either the first or second degree; that the Commonwealth will only ask and contend for the conviction of the " de-

fendant "for the crime of manslaughter, a crime of less degree than that specifi-cally set forth in the indictment above mentioned." *Held,* that the instrument was in effect a *nolle prosequi* of so much of the indictment as charged a crime of higher magnitude than manslaughter, and that it was not susceptible of mis-understanding as to its essence and its real effect.

The word "kill" is not absolutely requisite to a description of the crime of man-slaughter.

Where an indictment charges that the defendant "did assault and beat W with intent to murder her, and by such assault and beating did murder W," the dis-trict attorney has power to enter a *nolle prosequi* as to so much of the indictment as charged a crime greater than manslaughter.

Upon the impanelling of a jury after the entry of such *nolle prosequi,* the defend-ant was not entitled to challenge peremptorily more than two jurors.

Where, before the entry of such *nolle prosequi,* the defendant had pleaded "Not guilty," it was not necessary that he again should be called upon to plead.

At the trial of an indictment for manslaughter against a man, a witness, who is not an electric or telephone expert, may be permitted to describe the parts, produced in court and identified by him, of a dictograph apparatus installed by him in cells where the defendant and his wife were confined and to describe the way in which the apparatus was arranged and was connected in another room with a receiver used by a person to overhear conversations between the defendant and his wife.

A witness who, by means of such dictograph, overheard conversations between the defendant and his wife which were upon matters material to the issues on trial, and who testifies that he recognized their respective voices, may be permitted to state what he heard, the question, what weight should be given to the testimony, being for the jury.

The circumstance, that the conversation so overheard was between husband and wife when physically alone, is no ground for objection to the admissibiity of the evidence, R. L. c. 175, § 20, cl. 1, not being applicable and there being no rule of law that a third person who overhears a conversation between a husband and his wife, intended to be private, may not testify what it was.

*Whether* R. L. c. 175, § 66, to the effect that a declaration of a deceased person shall not be "inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowl-edge of the declarant," is applicable at the trial of an indictment for manslaughter, here was not decided, evidence which was excluded partly on that ground having also been excluded rightly because the presiding judge found that the statements offered were not made in good faith.

Where the district attorney at the trial of an indictment for manslaughter fails to require the exclusion, as incompetent, of evidence tending to show that a third person out of court had confessed to the commission of the crime with which the defendant was charged, he is not thereby precluded from objecting to the intro-duction of further evidence of statements by the same third person tending to substantiate his alleged confession.

The Commonwealth, having failed at the trial of an indictment for manslaughter to require the exclusion as incompetent of evidence of a confession by a third person of the commission of the crime with which the defendant was charged, and such testimony being admitted, may be permitted against the objection of the defendant to introduce testimony tending to show that at the time of the

commission of the crime such third person was in a distant part of the Commonwealth.

If evidence, which is incompetent by reason of a rule of law, but is material to the issue on trial, is admitted without objection, it is entitled to its probative force and therefore can be contradicted.

INDICTMENT, found and returned in the county of Middlesex on June 7, 1917, charging that the defendant on June 1, 1916, at Melrose "did assault and beat Lauretta W. Wakelin, with intent to murder her, and by such assault and beating did murder Lauretta W. Wakelin."

Certain motions by the defendant and their disposition are described in the opinion. The portions of the motions for a bill of particulars which were denied asked for specifications "in what manner and by what means" the defendant assaulted the deceased, "what was the cause of" her death, and "how and in what manner did the alleged assault and beating . . . cause" her death.

The so called "disclaimer," referred to in the opinion, was filed before the impanelling of the jury and was as follows:

"And now comes the Commonwealth of Massachusetts, by Nathan A. Tufts, District Attorney for the Northern District, and says that the above mentioned indictment sets forth and charges the commission of a crime greater than that which the Commonwealth expects to be able to prove, that is to say, the crime of murder; that the Commonwealth, therefore, disclaims and does not and will not ask or contend for a conviction of the defendant for the crime of murder in either the first or second degree; that the Commonwealth will only ask and contend for the conviction of the aforesaid Joseph Wakelin for the crime of manslaughter, a crime of less degree than that specifically set forth in the indictment above mentioned."

The defendant was tried before *Keating*, J. The material evidence, incidents of the trial and exceptions of the defendant are described in the opinion. The defendant was found guilty and alleged exceptions.

The case was submitted on briefs.

*W. R. Scharton & H. J. Barry*, for the defendant.

*N. A. Tufts*, District Attorney, *G. S. Harvey*, Assistant District Attorney, *& F. W. Fosdick*, Deputy District Attorney, for the Commonwealth.

RUGG, C. J. The defendant on June 21, 1917, pleaded not guilty to an indictment charging him in the statutory form with the crime of murder, attempting at the same time to reserve "the. right to file special pleas later." There is no rule of practice or procedure whereby a defendant in a prosecution for crime may plead to the general issue and as of right reserve the privilege of filing thereafter, either by way of substitution or otherwise, motions, pleas or other matters in their nature preliminary, such as a "plea in abatement" or a "motion to dismiss." Whether a plea of not guilty or of guilty, entered either in the absence or by advice of counsel, may be retracted and other pleadings filed, is a matter wholly for the court to determine in its discretion. *Commonwealth* v. *Chapman,* 11 Cush. 422. *Commonwealth* v. *Blake,* 12 Allen, 188. *Commonwealth* v. *Ingersoll,* 145 Mass. 381. *Commonwealth* v. *Mahoney,* 115 Mass. 151. The plea of not guilty was in effect a waiver of matters in abatement. *Commonwealth* v. *Lewis,* 1 Met. 151, 152.

The presiding judge simply permitted the defendant to file motions praying that he be permitted to file the preliminary plea, and after a hearing refused to allow it to be filed. The motion to dismiss alleged substantially the same reasons and stands on the same footing. Manifestly there was no error in this regard. Whether such motions be allowed or denied rested in the discretion of the judge. The judicial discretion appears to have been exercised wisely. Whatever of substance there may have been in the plea or motion, if any, is not before us on the merits. *Commonwealth* v. *Tucker,* 189 Mass. 457, 463. *Commonwealth* v. *Hayden,* 163 Mass. 453.

The motion to quash is grounded on the contention that the indictment does not follow the statutory form for murder set out in the schedule of forms annexed to R. L. c. 218, at page 1850. It is not now open to argument that the statutory form is inadequate. It is settled that it is sufficient. *Commonwealth* v. *Jordan,* 207 Mass. 259, and cases collected at page 266. *Commonwealth* v. *Allison,* 227 Mass. 57, 61. The indictment in the case at bar follows the skeleton form of the statute without amplification. In the particulars that it omits any averment as to the manner in which the defendant assaulted and beat the deceased, as to the wound given, or the part of the body upon which the mortal injury was

inflicted, or the time of death, it follows precisely the one held sufficient in the leading case of *Commonwealth* v. *Jordan, supra.* The motion to quash was overruled rightly, whether treated as relating to form or substance. It is of no consequence in this connection whether the motion be treated as a motion to quash or as a request to be allowed to file such a motion. In either event no right of the defendant has been affected.

The hearing of the several motions of the defendant, after the jury were impanelled rather than before but in their absence, presents no erroneous ruling of law under the circumstances here disclosed.

There was no error in the denial of parts of the defendant's motion for a bill of particulars. The specifications filed by the Commonwealth in addition to the allegations of the indictment furnished to the defendant ample information as to the nature and grounds of the crime with which he was charged. The crime thus was "fully and plainly, substantially and formally described" to him as required by the Constitution. Details of the assault, particularity respecting the cause of death, and precise nicety as to the relation of the beating to the fatal result, are not required. The refusal of the requests for particulars, so far as denied, was within the discretion of the court and his ruling was justified upon the authority of *Commonwealth* v. *King*, 202 Mass. 379, *Commonwealth* v. *Kelley*, 184 Mass. 320, and *Commonwealth* v. *Jordan*, 207 Mass. 259, 266, 267. The indictment did not allege and there is nothing to indicate that the assaulting and beating were done with any instrument or implement. On this and perhaps on other grounds the case at bar is quite distinguishable from *Commonwealth* v. *Sinclair*, 195 Mass. 100.

The district attorney was permitted to file a paper entitled a "disclaimer." There is no such pleading as a disclaimer known to our system of criminal pleading and practice. It is an appropriate descriptive term in pleading in real actions, *Prescott* v. *Hutchinson*, 13 Mass. 439, and under trustee process, *Mortland* v. *Little*, 137 Mass. 339, and it is familiar in patent law, and perhaps in other connections. The character of a pleading, however, is commonly to be determined by the nature of its averments and not by the name attached to it. An analysis of the paper here in question shows that in substance it is a declaration by the district

attorney that he will not ask for a conviction of the defendant for the crime of murder in either the first or second degree, but will only contend for his conviction of the crime of manslaughter. In substance that is a voluntary declaration that he will not further prosecute the portions of the indictment alleging the circumstances of aggravation which distinguish that kind of homicide constituting murder from the less heinous offence of manslaughter. The correct expression of that declaration by a district attorney is *nolle prosequi. Commonwealth* v. *Casey,* 12 Allen, 214, 218. It is within the power of a district attorney to enter a *nolle prosequi* either as to an entire indictment, or any count thereof, or any distinct and substantive part of it so long as there remains a charge of an offence originally set forth. *Commonwealth* v. *Tuck,* 20 Pick. 356, 366. *Commonwealth* v. *Dunster,* 145 Mass. 101. The district attorney may at his own pleasure enter a *nolle prosequi. Commonwealth* v. *Tuck,* 20 Pick. 356, 366, 367. *Lizotte* v. *Dloska,* 200 Mass. 327. The right and brief form of statement in the case at bar would have been that he would not further prosecute so much of the indictment as charged any higher crime than that of manslaughter or, as charged, murder in either degree, or some similar phrase. But the substance of what was undertaken is plain. It was in effect a *nolle prosequi* of so much of the indictment as charged a crime of higher magnitude than manslaughter. That is a well recognized part of criminal procedure. The statement filed by the district attorney is not susceptible of misunderstanding as to its essence and its real effect. It would be sacrificing substance to unimportant form to hold that the defendant had suffered any harm by reason of this irregularity.

It is well established that upon an indictment for murder a defendant may be found guilty of manslaughter. The lesser homicide is included in the charge of the greater. The present indictment does not contain the word "kill," which is aptly descriptive of the crime of manslaughter. It was in this form: "The jurors for the Commonwealth of Massachusetts on their oath present, That Joseph Wakelin on the first day of June in the year of our Lord one thousand nine hundred and sixteen at Melrose in the County of Middlesex aforesaid, did assault and beat Lauretta W. Wakelin, with intent to murder her, and by such assault and beating did murder Lauretta W. Wakelin. Against

the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided." But "kill" is not such a word or act as to be absolutely requisite to a description of the crime of manslaughter. As was said by Chief Justice Shaw in *Commonwealth* v. *Roby*, 12 Pick. 496, 504, 505, "The indictment for murder necessarily charges the fact of killing, as the essential and most material fact, which gives its legal character to the offence." Murder of necessity imports the killing of a human being. See *Commonwealth* v. *Chance*, 174 Mass. 245, 252. The statutory definition of "murder" as used in an indictment is, "The killing of a human being, with malice aforethought." R. L. c. 218, § 38. If the indictment in the case at bar had charged that the defendant did kill the deceased with malice aforethought, it could not rationally be contended that it would not be sufficient to support a verdict of manslaughter. It is equally sufficient to that end when the more succinct word "murder" is used. If the amplified phrase above supposed had been used, probably no one would urge that the district attorney could not enter a *nolle prosequi* as to so much of the indictment as charged that the homicide was committed "with malice aforethought." It is equally in his power to do so when the only word used is the more comprehensive term "murder," which is, both according to statutory definition and common and approved usage of the language, the exact equivalent of the longer expression. In principle this point is concluded against the defendant by *Commonwealth* v. *Dean*, 109 Mass. 349. See, in this connection, *Commonwealth* v. *Hall*, 142 Mass. 454, and R. L. c. 219, § 14.

After the entry of the *nolle prosequi* by the district attorney, the highest crime for which the defendant could be tried on the indictment was manslaughter. The defendant was put upon his trial for manslaughter and not for murder. Hence he was not entitled to challenge peremptorily more than two jurors. R. L. c. 176, § 29.

It was not necessary that he should be called again to plead. He had already pleaded not guilty to the indictment. That plea was addressed to every part as well as to the whole of the indictment. But he was given the opportunity by the court to plead anew, a privilege which he declined. In all this there was no error.

The testimony of a witness respecting the search made of the

ground and other natural objects near the place where the body
of the deceased was found, and the later discovery of a book not
there on the earlier occasion, the tracks of rubber boots, the height
of the water in a nearby pond, and statements made to him by
the defendant all related to pertinent matters and were admitted
rightly.

A witness named Smith testified respecting a mechanical con-
trivance called a dictograph, installed by him in the cells where
the defendant and his wife (who appears to have been arrested at
the same time) were later on the same day confined. The con-
trivance was produced in court and identified. He described its
parts and the way in which they were arranged in the cells and
connected in another room with a receiver used by him. He and
another witness, who made stenographic notes of what he heard,
were then permitted to narrate a conversation which, by means of
this mechanism, each overheard between the defendant and his
wife, the voices of each being recognized by both witnesses. In
all this there was no error. The witness Smith, although not an
electric or telephonic expert, was describing his own experiences
and observations as to an apparatus which had the quality of
transmitting the sounds produced by the human voice in a room
after the manner of a telephone. No scientific explanation of the
apparatus or of the phenomena produced by it was necessary.
*Lord Electric Co.* v. *Morrill,* 178 Mass. 304. It was for the jury
to say what weight should be given to the testimony. *McCarthy*
v. *Peach,* 186 Mass. 67.

The circumstance that the conversation was between a husband
and wife while they were physically alone is no ground for objec-
tion. There is no rule of law that third persons who hear a pri-
vate conversation between a husband and wife shall be restrained
from testifying what it was. *Commonwealth* v. *Griffin,* 110 Mass.
181. It is of no consequence whether such conversation is over-
heard by a witness nearby concealed from observation, or by one at
a distance enabled to overhear by means of electrical or other de-
vices which carry the sound of the voice. The provision of R. L.
c. 175, § 20, cl. 1, simply prohibits either the husband or the wife
from testifying to private conversations with one another. It
forbids one method of proof, but does not exclude proof by other
means. *Sampson* v. *Sampson,* 223 Mass. 451, 458–460.

Testimony as to conversations heard over the dictograph appears to have been considered in *State* v. *Minneapolis Milk Co.* 124 Minn. 34, 43, and *People* v. *Eng Hing*, 212 N. Y. 373, 387. There is no reason why it is not competent.

The defendant called a witness who testified without objection that during a part of 1917 he occupied a cell in the Springfield jail with one Ducharme, who before the arrest of the defendant told the witness that he, Ducharme, killed Lauretta W. Wakelin (the person for whose killing the defendant was indicted); that Ducharme also showed the witness a newspaper account of the arrest of the defendant for the murder of Lauretta; and that Ducharme later made a confession in writing which the witness had submitted to Mr. Clark, the sheriff of Hampden County; and that Ducharme was dead, having been executed at the State prison. The defendant thereupon asked the witness to state the details respecting the locality and manner of killing Lauretta as told him by Ducharme, accompanying the question with offer of proof of testimony which, if Ducharme had himself been a witness would have been competent. This was excluded upon objection being made, the judge ruling that R. L. c. 175, § 66, did not apply to criminal cases, and second, finding as matter of fact that the alleged statement was not made in good faith. It becomes unnecessary to consider the soundness of the ruling, as to which see *Commonwealth* v. *Stuart*, 207 Mass. 563, 568, because the preliminary finding of the judge that the statement was not made in good faith rendered necessary its exclusion. *Carroll* v. *Boston Elevated Railway*, 210 Mass. 500. *Slotofski* v. *Boston Elevated Railway*, 215 Mass. 318. *McSweeney* v. *Edison Electric Illuminating Co.* 228 Mass. 563.

The contention of the defendant in substance is that because the evidence as to the confession, although incompetent, had been admitted without objection, it thereupon became permissible for him as of right to introduce further evidence to the same effect likewise incompetent. Waiver of necessary formality of proof as to one piece of evidence does not open the door to all evidence of the same kind. Failure on the part of the district attorney to object to some incompetent evidence does not estop him from making objection to other like incompetent evidence. It is the law of this Commonwealth that confessions by third persons out

of court to the commission of the crime with which the defendant is charged, are inadmissible. *Commonwealth* v. *Chabbock*, 1 Mass. 144. *Commonwealth* v. *Felch,* 132 Mass. 22. It was said in *Donnelly* v. *United States*, 228 U. S. 243, 273, 274, in reaching the same conclusion, that "In this country there is a great and practically unanimous weight of authority in the State courts against admitting evidence of confessions of third parties made out of court and tending to exonerate the accused." No reason is disclosed in the circumstances of the case at bar for relaxing that salutary rule.

The evidence as to the confession having been admitted without objection was entitled to its probative force. *Hubbard* v. *Allyn*, 200 Mass. 166, 171. *Wood* v. *Blanchard*, 212 Mass. 53, 55. *Diaz* v. *United States*, 223 U. S. 442, 450. It therefore was permissible for the Commonwealth to introduce evidence to rebut its force by showing that Ducharme was in a distant part of the State on the day when the crime with which the defendant was charged, was committed, and for several preceding and following days. The testimony as to the confession was not immaterial. It was pertinent, but incompetent as evidence because of the means of proof. The confession having been offered by the defendant and having been admitted without objection and being material, it stood on the same footing as to contradiction as any other material evidence. It gained no added sanctity or security because, although incompetent, it had been admitted without objection. It is immaterial evidence alone which can be contradicted only in the discretion of the presiding judge. *Bennett* v. *Susser*, 191 Mass. 329, and cases cited at page 330.

All the other exceptions saved by the defendant have been examined carefully. But there is nothing in them which calls for comment. No error is disclosed.

*Exceptions overruled.*